**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

SONIA GARCIA,

    Plaintiff,

v.                                          Case No: 6:14-cv-255-Orl-40TBS

WAL-MART STORES EAST, L.P.,

    Defendant.

## ORDER

This cause comes before the Court on Defendant's Renewed Motion for Summary Judgment and Memorandum of Law in Support Thereof (Doc. 54), filed December 8, 2014. On December 22, 2014, Plaintiff responded in opposition (Doc. 57). On December 31, 2014, Defendant replied in support (Doc. 60). Defendant's renewed motion for summary judgment is therefore ripe for adjudication. Upon consideration, the Court denies Defendant's renewed motion for summary judgment.

**I.  BACKGROUND[1]**

On January 21, 2012, Plaintiff, Sonia Garcia ("Garcia"), entered a store owned and operated by Defendant, Wal-Mart Stores East, L.P. ("Wal-Mart"), in Kissimmee, Florida. As Garcia walked through the store toward the garden center, she slipped and fell to the ground, landing on her left knee. Garcia states that she slipped on a clear liquid on the floor that resembled water. (Doc. 58-1, 49:25–50:7). After Garcia's fall, Wal-Mart staff

---

1. Unless otherwise indicated, the Court gathers this account of the facts from the parties' Joint Statement of Material Facts (Doc. 55).

cleaned up the liquid from the floor. Garcia states that she has suffered injuries to her neck, back, and left knee as a result of the fall. (*Id.* at 63:13–65:12).

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). However, "[t]he court need not consider only the cited materials" and may consider any other material in the record. Fed. R. Civ. P. 56(c)(3).

An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record demonstrating a lack of genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows "an absence of evidence to support the nonmoving party's case," the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine disputes of material facts. *Celotex*, 477 U.S. at 325; *see also Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Rather, the non-movant must go beyond the pleadings and "come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587.

In determining whether a genuine dispute of material fact exists, the Court must read the record and the evidence presented in the light most favorable to the non-moving party. *See Porter*, 461 F.3d at 1320. Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587.

### III.   DISCUSSION

A federal court sitting in diversity applies the substantive law of the state in which the case arose. *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132–33 (11th Cir. 2010). To that end, the parties agree on the principles of Florida law governing this dispute. "Under Florida law, a premises owner owes two duties to a business invitee: (1) to take ordinary and reasonable care to keep its premises reasonably safe for invitees; and (2) to warn of perils that were known or should have been known to the owner and of which the invitee could not discover." *Delgado v. Laundromax, Inc.*, 65 So. 3d 1087, 1089 (Fla. Dist. Ct. App. 2011). In the context of slip and falls, the Florida Legislature requires a plaintiff to "prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it." Fla. Stat. § 768.0755(1). A plaintiff may prove constructive knowledge in one of two ways: (1) by presenting circumstantial evidence showing that the condition existed for such a period of time that the defendant should have known of the condition through its exercise of ordinary care, or (2) by showing that the unsafe condition occurred with such regularity that it was foreseeable. *Id.* § 768.0755(1)(a)–(b).

The parties also agree, and the record confirms, that Wal-Mart did not have actual knowledge of the unsafe condition which caused Garcia's fall.  Further, Garcia does not submit that the unsafe condition at issue in this case occurred with such regularity that it was foreseeable; rather, Garcia narrows her argument to showing through circumstantial evidence that the liquid on the floor which caused her fall existed for such a period of time that Wal-Mart should have known of its existence through the exercise of ordinary care. (Doc. 57, pp. 1–2). The Court similarly limits its analysis to that issue.

There should be no surprise at the abundance of slip and fall case law springing from Florida's courts and federal courts applying Florida law.  Upon surveying those cases which focus on circumstantial evidence of the length of time a transient substance persisted on a business owner's floor, the Court is able to discern four primary factors which drive the courts' analyses: (1) lack of evidence indicating that a transitory substance existed, (2) evidence of how a substance ended up on the floor, (3) the condition of a substance upon discovery, and (4) evidence of the business owner's neglect in inspecting its premises.

First, a plaintiff who cannot indicate that some transitory substance caused her fall generally cannot establish constructive knowledge.  The quintessential case is *Feinman v. Target Corp.*, No. 11-62480-CIV, 2012 WL 6061745 (S.D. Fla. Dec. 6, 2012).  There, Mrs. Feinman and her husband visited a Target store to purchase an iPad.  *Id.* at *1. While walking through the store, Mrs. Feinman slipped and fell.  *Id.*  At their depositions, both Mrs. and Mr. Feinman testified that they could not identify what caused her to slip, although Mrs. Feinman stated that she felt "some kind of suction or something" under her shoe.  *Id.*  Moreover, Target's executive team leader testified that she responded to the

area immediately upon learning of the accident, but found nothing on the floor which might have caused Mrs. Feinman's fall. *Id.* at *2. Numerous other employees and witnesses confirmed that they had seen nothing on the floor either before or after Mrs. Feinman's fall. *Id.* at *2–3. Without any suggestion that some substance or object caused Mrs. Feinman to slip, the court could not infer that Target had constructive knowledge of an unsafe condition. *Id.* at *6. Therefore, where a plaintiff cannot come forward and say, at the very least, that some substance or object caused her to slip and fall, courts will not infer constructive knowledge.[2]

Second, where a substance or object is identified, circumstantial evidence of its source may establish a business owner's constructive knowledge. For example, in *Doudeau v. Target Corp.*, 572 F. App'x 970, 972 (11th Cir. 2014), the court inferred a business owner's constructive knowledge of a substance based on an employee's testimony that the water on which the plaintiff slipped must have come from outside, as it had just rained. The *Doudeau* court specifically distinguished these facts from those in *Delgado v. Laundromax, Inc.* In *Delgado*, the court held that constructive knowledge

---

2. *See also, e.g.*, *Vallot v. Logan's Roadhouse, Inc.*, 567 F. App'x 723, 726 (11th Cir. 2014) (affirming summary judgment in favor of business owner in part because the plaintiff and an employee could not identify any substance on which the plaintiff might have slipped); *Gordon v. Target Corp.*, No. 07-80412-CIV, 2008 WL 2557509, at *5 (S.D. Fla. June 23, 2008) ("Gordon has failed to raise a genuine issue of material fact that there was any substance or item [on] the floor that caused her to fall . . . ."); *Publix Super Mkts., Inc. v. Schmidt*, 509 So. 2d 977, 978 (Fla. Dist. Ct. App. 1987) (finding no constructive knowledge to support a jury verdict in favor of plaintiff where the plaintiff, her husband, and other witnesses testified that they had seen nothing on the floor that might have caused the plaintiff's fall); *Evens v. E. Air Lines, Inc.*, 468 So. 2d 1111, 1112 (Fla. Dist. Ct. App. 1985) (finding no constructive knowledge, in part, because the plaintiff could not identify some substance or object which caused her fall and the defendant's flight attendants averred that they had inspected the floor immediately before the plaintiff's fall and saw nothing).

could not be inferred because there was no evidence of any possible source where the water on which the plaintiff slipped could have come. *Delgado*, 65 So. 3d at 1090. Therefore, the converse is also true that the lack of circumstantial evidence of a substance's source may preclude an inference of constructive knowledge.[3]

The third category of cases emphasizes the condition of a substance upon its discovery. Intuitively, the condition of a substance left on a floor deteriorates over time; frozen foods melt, vegetables and fruits are smashed or become dirty and wilt, solid objects become scraped and scuffed, and liquids become soiled, smeared, and show track marks and footprints. Circumstantial evidence of a substance's deterioration allows the inference that enough time had passed for a business owner to have constructive knowledge of the substance.[4] Conversely, circumstantial evidence that a substance appears fresh, clean, or undisturbed when a plaintiff slips and falls usually precludes

---

3. *See also, e.g.*, *Hill v. Ross Dress for Less, Inc.*, No. 12-23368-CIV, 2013 WL 6190435, at *5 (S.D. Fla. Nov. 26, 2013) (failure to identify source of plastic on which the plaintiff slipped precluded constructive knowledge).
4. *See, e.g.*, *Garcia v. Target Corp.*, No. 13-60308-CIV, 2014 WL 505151, at *3 (S.D. Fla. Feb. 7, 2014) (constructive knowledge inferred from footprints in water); *Owens v. Publix Supermkts., Inc.*, 802 So. 2d 315, 329 (Fla. 2001) (constructive knowledge inferred from aged condition of banana); *Montgomery v. Fla. Jitney Jungle Stores, Inc.*, 281 So. 2d 302, 303 (Fla. 1973) (constructive knowledge inferred from "old, wilted and dirty looking" collard leaf); *Cisneros v. Costco Wholesale Corp.*, 754 So. 2d 819, 821 (Fla. Dist. Ct. App. 2000) (constructive knowledge inferred from grocery cart tracks and dirty footprints in water); *Teate v. Winn-Dixie Stores, Inc.*, 524 So. 2d 1060, 1061 (Fla. Dist. Ct. App. 1988) (constructive knowledge inferred in part from thawed peas); *Zayre Corp. v. Bryant*, 528 So. 2d 516, 516 (Fla. Dist. Ct. App. 1988) (constructive knowledge inferred from water that appeared "slimy" and exhibited grocery cart tracks); *Winn-Dixie Stores, Inc. v. Guenther*, 395 So. 2d 244, 246 (Fla. Dist. Ct. App. 1981) (constructive knowledge inferred from dirty water showing grocery cart tracks and scuff marks); *Grizzard v. Colonial Stores, Inc.*, 330 So. 2d 768, 769 (Fla. Dist. Ct. App. 1976) (constructive knowledge inferred from partially thawed orange juice concentrate).

constructive knowledge.[5]

Finally, circumstantial evidence of a business owner's neglect in inspecting its premises may establish constructive knowledge.  The most common examples are when a business owner fails to follow its own implemented inspection procedures or fails to inspect its premises at a reasonable rate.[6]  In contrast, evidence that a business owner followed its inspection policies or inspected its premises on a regular basis may preclude a finding of constructive knowledge.[7]

---

5. *See, e.g.*, *Berard v. Target Corp.*, 559 F. App'x 977, 978 (11th Cir. 2014) (water that appeared "clean," "clear," and "fresh" despite location in high traffic area precluded constructive knowledge); *Feliciano v. Target Corp.*, No. 2:13-cv-278-FtM-38DNF, 2014 WL 2199642, at *3 (M.D. Fla. May 27, 2014) (clean water precluded constructive knowledge); *Oken ex rel. J.O. v. CBOCS, Inc.*, No. 8:12-cv-782-T-33MAP, 2013 WL 2154848, at *5 (M.D. Fla. May 17, 2013) (clean water devoid of track marks contributed to finding no constructive knowledge); *Sammon v. Target Corp.*, No. 8:11-cv-1258-T-30EAJ, 2012 WL 3984728, at *3 (M.D. Fla. Sept. 11, 2012) (same); *Wal-Mart Stores, Inc. v. King*, 592 So. 2d 705, 707 (Fla. Dist. Ct. App. 1991) (clean liquid that showed no smudges or skid marks precluded constructive knowledge); *Broz v. Winn-Dixie Stores, Inc.*, 546 So. 2d 83, 83 (Fla. Dist. Ct. App. 1989) (grape that exhibited no indicia of thawing, grocery cart tracks, or footprints precluded constructive knowledge).
6. *See, e.g.*, *Kertz v. United States*, No. 2:12-cv-22-FtM-29SPC, 2013 WL 1464180, at *3 (M.D. Fla. Apr. 10, 2013) (constructive knowledge inferred from failure to follow inspection policy); *Kenny v. United States*, No. 8:10-CV-1083-T-27EAJ, 2012 WL 523624, at *3 (M.D. Fla. Feb. 16, 2012) (constructive knowledge inferred from failure to inspect floor thirty minutes prior to the plaintiff's fall); *Gerard v. Eckerd Corp.*, 895 So. 2d 436, 437 (Fla. Dist. Ct. App. 2005) (reversing summary judgment in favor of business owner where inspection policy appeared unreliable); *Teate*, 524 So. 2d at 1061 (Fla. Dist. Ct. App. 1988) (failure to inspect area for fifteen to twenty minutes prior to the plaintiff's fall supported jury verdict finding business owner's constructive knowledge); *Schmidt v. Bowl Am. Fla., Inc.*, 358 So. 2d 1385, 1386–87 (Fla. Dist. Ct. App. 1978) (constructive knowledge inferred from failure of bowling alley to inspect approaches to bowling lanes for at least five and a half hours prior to the plaintiff's fall); *Jenkins v. Brackin*, 171 So. 2d 589, 591 (Fla. Dist. Ct. App. 1965) (constructive knowledge inferred from failure to inspect grocery store floor fifteen to twenty minutes before the plaintiff's fall).
7. *See, e.g.*, *Hill*, 2013 WL 6190435, at *5 (S.D. Fla. Nov. 26, 2013) (inspection of area ten minutes prior to the plaintiff's fall contributed to finding no constructive knowledge); *Oken*, 2013 WL 2154848, at *5 (M.D. Fla. May 17, 2013) (unrebutted evidence that

In categorizing these cases, the Court does not mean to imply that there are no other factors which warrant consideration or that a court should conduct any weighing of factors in order to find a solution.  In some cases, one factor is enough to resolve the issue of constructive knowledge.  In others, examination of multiple factors answers the question.  The Court simply wishes to add some cohesion to the myriad principles which apply to Florida slip and fall cases based on trends the Court has divined from the case law.

Applying those trends to the instant case, the Court concludes that Garcia has provided sufficient circumstantial evidence to create a genuine dispute as to whether Wal-Mart had constructive knowledge of the liquid which caused Garcia's fall.  As a preliminary matter, Wal-Mart does not contest that Garcia slipped on liquid in its store and that Wal-Mart's employees cleaned up the liquid after her fall.  (Doc. 55, ¶¶ 2–6).  Rather, Wal-Mart contends that the facts here fall within the third category of cases—those that focus on the condition of the substance upon its discovery.  (Doc. 54, pp. 6–10).  In support, Wal-Mart points to Garcia's deposition testimony, in which Garcia states that she did not see any liquid on the floor prior to her fall.  (Doc. 54-1, 45:22–24).  Garcia further testified that, after she fell, she noticed that the liquid she slipped on was "clear" and did not exhibit any dirt, footprints, or track marks.  (*Id.* at 49:25–50:7, 52:1–18).  Wal-Mart's customer

---

store manager inspected bathroom floor every hour pursuant to policy contributed to finding no constructive knowledge); *Sammon*, 2012 WL 3984728, at *3 (M.D. Fla. Sept. 11, 2012) (unrebutted evidence that floor was continuously inspected by employees precluded constructive knowledge); *Walker v. Winn-Dixie Stores, Inc.*, No. 1D13-3781, 2014 WL 4086798, at *3–4 (Fla. Dist. Ct. App. Aug. 20, 2014) (surveillance video showing employees inspecting aisle two to three minutes prior to the plaintiff's fall precluded constructive knowledge); *Zimmerman v. Eckerd Corp.*, 839 So. 2d 835, 836 (Fla. Dist. Ct. App. 2003) (unrebutted evidence that floor was inspected every ten to fifteen minutes precluded constructive knowledge).

service manager, Sabrina Lane, also confirmed at her deposition that the liquid was "clear" when she arrived at the location of Garcia's fall.  (Doc. 54-2, 9:17–10:2).  Due to the clean, clear, and undisturbed appearance of the liquid upon its discovery, Wal-Mart concludes that not enough time had passed to create constructive knowledge.

Garcia responds that Wal-Mart had constructive knowledge because it failed to inspect its premises according to its own policies.  (Doc. 57, pp. 4–7).  Regarding Wal-Mart's inspection policy, store manager Peter Schlutz testified that Wal-Mart teaches its employees to constantly be on the lookout for hazards on the floor.  (Doc. 58-2, 24:3–25:5).  Mr. Schlutz also stated that Wal-Mart employs one to three sweepers whose only duty is to constantly patrol high traffic areas, including the area in which Garcia slipped and fell.  (*Id.* at 25:6–26:12).  Another Wal-Mart employee testified at deposition that "every five minutes we have people in every area that go around in each department." (Doc. 58-3, 10:6–7).  Ms. Lane referred to Wal-Mart's inspection policy as "constant" and also described maintenance staff whose sole duty was to walk throughout the store with brooms and mops, searching for potential hazards.  (Doc. 58-4, 14:10–15:3, 19:7–11).  Despite Wal-Mart's inspection policy, video surveillance footage covering from one hour before to one hour after Garcia's fall shows that no Wal-Mart employee entered the area to inspect the floor until after the accident, meaning that an inspection had not occurred for at least one hour.  (Doc. 59).

Wal-Mart does not dispute that it failed to inspect the area where Garcia fell for at least one hour, but contends that Garcia's argument is unfounded and contrary to Florida law.  (Doc. 54, p. 10).  Wal-Mart relies heavily on *Wal-Mart Stores, Inc. v. King*, 592 So. 2d 705 (Fla. Dist. Ct. App. 1991), which holds that, under facts similar to those found

here, Wal-Mart's failure to conduct an inspection one and one-half hours prior to the plaintiff's fall was not, by itself, sufficient to infer constructive knowledge.  The inspection policy in *King*, however, was significantly different than Wal-Mart's inspection policy in this case.  In *King,* Wal-Mart's policy was to conduct a safety sweep "several times during the day."  *Id.* at 706.  Under those circumstances, it was neither unreasonable nor contrary to the policy for an inspection not to occur for a matter of hours, especially where no evidence indicated that Wal-Mart failed to follow the policy.  In this case, the unrebutted testimony of Wal-Mart's own employees affirms that Wal-Mart's policy is to have sweepers constantly patrolling high traffic areas—such as the area in which Garcia fell— and that inspections occur every *five* minutes.   Since the evidence shows that no employee inspected the area where Garcia fell for at least one hour, it is reasonable to infer that Wal-Mart failed to follow its inspection policy at least twelve times.  As such, the reasoning in *King* does not apply here.

      Wal-Mart also characterizes Garcia's argument as improperly shifting the burden to business owners to show that they inspected their premises in an appropriate manner in order to escape liability under a constructive knowledge theory.  (Doc. 60, p. 2).  The Court disagrees.  Upon Wal-Mart's showing that there is no dispute of material fact on the issue of constructive knowledge, the burden shifts to Garcia to produce evidence that shows a genuine dispute.  As described above, Garcia has done so through video surveillance footage and the deposition testimony of Wal-Mart's employees.  Because a business owner's failure to follow its own implemented inspection procedures constitutes

circumstantial evidence of constructive knowledge,[8] Garcia has met her burden on summary judgment.

## IV.    CONCLUSION

For the aforementioned reasons, Defendant's Renewed Motion for Summary Judgment (Doc. 54) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on March 3, 2015.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

---

8.  *See* supra note 6 and accompanying text.